**Case No. 23-5036**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**
_____

**KEITH EARL ROBINSON,**
*Petitioner-Appellant,*

**v.**

**KAMERON HARVANEK, Warden,**
*Respondent-Appellee.*
_____

**RESPONDENT-APPELLEE'S ANSWER BRIEF**
_____

**On Appeal from the United States District Court
For the Northern District of Oklahoma
(D.C. No. 20-CV-86-GKF-CDL)
The Honorable Gregory K. Frizzell, United States District Judge**
_____

**GENTNER F. DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA**

**TESSA L. HENRY, OBA #33193
ASSISTANT ATTORNEY GENERAL**

**313 NE 21st Street
Oklahoma City, OK   73105
(405) 521-3921 (Voice)/(405) 522-4534 (Fax)
Service email:   fhc.docket@oag.ok.gov
                          tessa.henry@oag.ok.gov**

**ATTORNEYS FOR RESPONDENT-APPELLEE**

**July 14, 2023**                          **ORAL ARGUMENT IS NOT REQUESTED**

## <u>TABLE OF CONTENTS</u>

Page

**PRIOR OR RELATED APPEALS** ........................................................ xii

**STATEMENT OF JURISDICTION** .......................................................1

**STATEMENT OF ISSUE PRESENTED FOR REVIEW** ...................................2

**STATEMENT OF THE CASE** ..............................................................2

    **A.**   **Relevant Facts** ................................................................2

    **B.**   **Procedural History** .........................................................7

**SUMMARY OF THE ARGUMENT** .......................................................9

**STANDARD OF REVIEW** ................................................................11

**ARGUMENT AND AUTHORITY** ........................................................15

    <u>**GROUND FOR RELIEF**</u>

    **EVEN ASSUMING PETITIONER HAS NOT WAIVED THE ONLY CLAIM PROPERLY BEFORE THIS COURT ON APPEAL, THE OCCA'S REJECTION OF PETITIONER'S INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIM ON DIRECT APPEAL WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW, NOR WAS IT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS** ...............................................................................15

        **A.**   **Petitioner has Abandoned and Waived All, or at Least Part of, the Claim Properly Before this Court** ................................................................16

            *1.*   *Petitioner has Abandoned and Waived All but One of the Three Subclaims Contained Within the District Court's COA* ................................16

i

2. With Respect to the Subclaim Petitioner has not Abandoned, Petitioner's Argument is so Ambiguous and Inadequately Developed as to Render the Subclaim Waived ..........................................19

3. Petitioner has Waived Appellate Review by Providing an Inadequate Record to this Court .............25

4. Conclusion ........................................................................27

B. Petitioner has Failed to Show that *No* Fairminded Jurist Could Agree with the OCCA's Adjudication of his Trial Counsel Claim .......................................28

1. Petitioner's Ineffective-Assistance-of-Counsel Claim on Direct Appeal, and the OCCA's Rejection of the Claim ................................................28

2. Clearly Established Supreme Court Law .......................33

3. Petitioner has Failed to Meet His Onerous Burdens Under Strickland and § 2254(d), as the OCCA's Decision was Reasonable .......................36

a. Petitioner's Argument that He is Entitled to Relief Because the OCCA Did Not Expressly Discuss the "General Ineptitude" Portion of His Claim is Without Merit ...............37

b. Petitioner has Failed to Show that the OCCA's Rejection of his Ineffective-Assistance-of-Counsel Claim was Unreasonable ....................................................43

4. Conclusion ........................................................................50

C. Conclusion .............................................................................50

CONCLUSION ........................................................................................51

**STATEMENT OF ORAL ARGUMENT** ............................................................**51**

**CERTIFICATE OF COMPLIANCE** ...................................................................**52**

**CERTIFICATE OF SERVICE** .............................................................................**52**

**CERTIFICATE OF DIGITAL SUBMISSION**.....................................................**52**

## TABLE OF AUTHORITIES

## CASES

***Barry v. Braggs***,
    No. CIV-19-587-SLP, 2021 WL 8972014 (W.D. Okla. Jan. 28, 2021)............24

***Best v. Culliver***,
    No. 04-14285, 165 F. App'x 740 (11th Cir. Jan. 27, 2006)...............................18

***Black v. Workman***,
    682 F.3d 880 (10th Cir. 2012)..............................................................................15

***Bland v. Sirmons***,
    459 F.3d 999 (10th Cir. 2006).............................................................................25

***Brinkmann v. Dallas Cnty. Deputy Sheriff Abner***,
    813 F.2d 744 (5th Cir. 1987)................................................................................18

***Bronson v. Swensen***,
    500 F.3d 1099 (10th Cir. 2007)...........................................................................18

***Brumfield v. Cain***,
    576 U.S. 305 (2015)..............................................................................................14

***Childers v. Crow***,
    1 F.4th 792 (10th Cir. 2021) ...............................................................................38

***Cullen v. Pinholster***,
    563 U.S. 170 (2011)..............................................................................................25

***Dikeman v. Nat'l Educators, Inc.***,
    81 F.3d 949 (10th Cir. 1996)...............................................................................26

***Dunn v. Reeves***,
    141 S. Ct. 2405 (2021) .........................................................................................50

***Eizember v. Trammell***,
    803 F.3d 1129 (10th Cir. 2015)...........................................................................37

*Femedeer v. Haun*,
   227 F.3d 1244 (10th Cir. 2000)..................................................... **18, 23**

*Foreman v. Elam*,
   No. 19-7020, 796 F. App'x 529 (10th Cir. Dec. 6, 2019) .................................**24**

*Foreman v. Elam*,
   No. CIV 18-071-RAW-SPS, 2019 WL 1413755 (E.D. Okla. Mar. 28, 2019)
   ...................................................................................................**24**

*Frost v. Pryor*,
   749 F.3d 1212 (10th Cir. 2014)..........................................................**14**

*Gilbert v. Mullin*,
   302 F.3d 1166 (10th Cir. 2002)..........................................................**13**

*Gilson v. Sirmons*,
   520 F.3d 1196 (10th Cir. 2008)..........................................................**11**

*Gonzales v. Martin*,
   No. CIV-18-297-R, 2018 WL 4494993 (W.D. Okla. Sept. 19, 2018)...............**24**

*Grant v. Royal*,
   886 F.3d 874 (10th Cir. 2018)........................................ **25, 39, 42, 46, 49**

*Haines v. Kerner*,
   404 U.S. 519 (1972)...........................................................................**23**

*Hall v. Bellmon*,
   935 F.2d 1106 (10th Cir. 1991)..........................................................**23**

*Hamilton v. Mullin*,
   436 F.3d 1181 (10th Cir. 2006)..........................................................**11**

*Hancock v. Trammell*,
   798 F.3d 1002 (10th Cir. 2015).................................................... **37, 39**

*Harrington v. Richter*,
   562 U.S. 86 (2011)........................................ **11, 12, 13, 29,  35, 40, 41, 46, 48, 50**

*Harris v. Sharp*,
   941 F.3d 962 (10th Cir. 2019)................................................................**37**

*Hart v. Johnson*,
   No. 98-41113, 180 F.3d 265, 1999 WL 301888 (5th Cir. May 5, 1999)...........**18**

*Hill v. Farris*,
   No. CIV-21-335-C, 2022 WL 16954832 (W.D. Okla. Oct. 7, 2022) ................**24**

*Holland v. Allbaugh*,
   824 F.3d 1222 (10th Cir. 2016)................................................................**50**

*House v. Hatch*,
   527 F.3d 1010 (10th Cir. 2008)................................................................**12**

*Huey v. Kunzweiler*,
   No. 20-5038, 847 F. App'x 530 (10th Cir. Feb. 25, 2021) .................................**24**

*Huey v. Kunzweiler*,
   No. 20-CV-0021-CVE-FHM, 2020 WL 1325359 (N.D. Okla. Mar. 20, 2020)
   ............................................................................................................**24**

*Jacobs v. Allbaugh*,
   No. CIV-17-1327-D, 2018 WL 6333663 (W.D. Okla. July 16, 2018)..............**24**

*James v. Gibson*,
   211 F.3d 543 (10th Cir. 2000)................................................................**34**

*Johnson v. Williams*,
   568 U.S. 289 (2013)........................................................ **12, 29, 40, 41**

*Lambert v. Blackwell*,
   387 F.3d 210 (3d Cir. 2004) ................................................................**42**

*Lockett v. Trammell*,
   711 F.3d 1218 (10th Cir. 2013)................................................................**18**

*Loya v. Whitten*,
   No. CIV-20-922-C, 2021 WL 3477710 (W.D. Okla. June 7, 2021)................**24**

*Madison v. Allbaugh*,
   No. CIV 18-243-RAW-KEW, 2019 WL 1302558 (E.D. Okla. Mar. 21, 2019)
   ...............................................................................................24

*Maupin v. Harpe*,
   No. CIV-21-630-D, 2023 WL 1774991 (W.D. Okla. Jan. 9, 2023) .................24

*Mendiola v. Schomig*,
   224 F.3d 589 (7th Cir. 2000)...................................................................42

*Menzies v. Powell*,
   52 F.4th 1178 (10th Cir. 2022) ...............................................................22

*Merzbacher v. Shearin*,
   706 F.3d 356 (4th Cir. 2013)...................................................................42

*Miller-El v. Cockrell*,
   537 U.S. 322 (2003)................................................................................2

*Moore v. Marr*,
   254 F.3d 1235 (10th Cir. 2001)...............................................................34

*Murrell v. Shalala*,
   43 F.3d 1388 (10th Cir. 1994).......................................................... 18, 22

*Olmos v. Holder*,
   780 F.3d 1313 (10th Cir. 2015)...............................................................37

*Padilla v. Kentucky*,
   559 U.S. 356 (2010)...............................................................................35

*Ramos v. Rankins*,
   No. 19-CV-112-RAW-KEW, 2022 WL 4352738 (E.D. Okla. Aug. 29, 2022)
   ...............................................................................................24

*Rawle v. Wyoming Dep't Of Corr. State Penitentiary Warden*,
   No. 10-8021, 390 F. App'x 769 (10th Cir. Aug. 3, 2010)..................23

*Redfearn v. Rankins*,
   No. 22-6061, 2023 WL 116475 (10th Cir. Jan. 6, 2023) ...................49

*Reedy v. Werholtz,*
    660 F.3d 1270 (10th Cir. 2011)............................................................... 18, 22, 23

*Rice v. Collins,*
    546 U.S. 333 (2006)...................................................................................14

*Rogers v. Mays,*
    69 F.4th 381 (6th Cir. 2023) ....................................................................42

*Rojem v. Gibson,*
    245 F.3d 1130 (10th Cir. 2001)................................................................22

*Rosales v. Pettigrew,*
    No. CIV-20-804-HE, 2020 WL 8513827 (W.D. Okla. Dec. 15, 2020).............24

*Sandoval v. Ulibarri,*
    548 F.3d 902 (10th Cir. 2008)..................................................................42

*Sawyers v. Norton,*
    962 F.3d 1270 (10th Cir. 2020).......................................................... 18, 22

*Sexton v. Beaudreaux,*
    138 S. Ct. 2555 (2018) ..................................................................... 41, 42, 49

*Stermer v. Warren,*
    360 F. Supp. 3d 639 (E.D. Mich. 2018)....................................................42

*Strickland v. Washington,*
    466 U.S. 668 (1984)..................... 10, 17, 20, 33, 34, 35, 36, 44, 45, 46, 48, 49, 50

*Sullivan v. Rios,*
    No. CIV-15-0067-M, 2015 WL 4926475 (W.D. Okla. June 12, 2015)............23

*Thomas v. Gibson,*
    218 F.3d 1213 (10th Cir. 2000)................................................................22

*Tran v. Tr. of State Coll. in Colo.,*
    355 F.3d 1263 (10th Cir. 2004)................................................................18

***Travelers Indem. Co. v. Accurate Autobody, Inc.***,
 340 F.3d 1118 (10th Cir. 2003)..............................................................**26**

***United States v. Kunzman***,
 54 F.3d 1522 (10th Cir. 1995)................................................................**18**

***United States v. Vandemerwe***,
 No. 09-4186, 405 F. App'x 344 (10th Cir. Dec. 16, 2010) ................**26**

***United States v. Walker***,
 918 F.3d 1134 (10th Cir. 2019)..............................................................**18**

***United States v. Williams***,
 790 F.3d 1059 (10th Cir. 2015)..............................................................**22**

***United States v. Wooten***,
 377 F.3d 1134 (10th Cir. 2004)..............................................................**18**

***United States v. Zannino***,
 895 F.2d 1 (1st Cir. 1990) .............................................................. **19, 22**

***Valdez v. Bravo***,
 373 F.3d 1093 (10th Cir. 2004)..............................................................**13**

***White v. Woodall***,
 572 U.S. 415 (2014)...............................................................................**14**

***Williams v. Beto***,
 354 F.2d 698 (5th Cir. 1965)..................................................................**34**

***Williams v. Dowling***,
 No. 19-CV-0530-GKF-FHM, 2020 WL 3865078 (N.D. Okla. July 8, 2020)
 ...............................................................................................................**24**

***Williams v. Taylor***,
 529 U.S. 362 (2000)...............................................................................**12**

***Wood v. Allen***,
 558 U.S. 290 (2010)...............................................................................**14**

*Wood v. Carpenter*,
  907 F.3d 1279 (10th Cir. 2018)............................................................43

## **FEDERAL STATUTES**

28 U.S.C. § 1291............................................................................**2**

28 U.S.C. § 2241............................................................................**2**

28 U.S.C. § 2253............................................................................**2**

28 U.S.C. § 2254........................................................ **1, 10, 11, 12, 13, 14, 15, 21, 25,**
................................................................ **29, 35, 36, 38, 39, 41, 42, 43, 44, 48, 49, 50**

## **STATE STATUTES**

Okla. Stat. tit. 21, § 1431 (2011)............................................................7

## **RULES**

10th Cir. R. 10.2 ..........................................................................**3**

10th Cir. R. 10.4 ..........................................................................**3, 25**

10th Cir. R. 28.1 ..........................................................................**1**

10th Cir. R. 30.1 ..........................................................................**3, 25**

10th Cir. R. 30.2 ..........................................................................**3, 27**

10th Cir. R. 32.1 ..........................................................................**18**

Fed. R. App. P. 4..........................................................................**2**

Fed. R. App. P. 28..........................................................................**19, 22**

Fed. R. App. P. 30..........................................................................**25**

Fed. R. App. P. 32.1..........................................................................**18**

**Fed. R. App. P. 34**................................................................................................**51**

## **PRIOR OR RELATED APPEALS**

There are no prior or related appeals.

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| **KEITH EARL ROBINSON,** | ) | |
| | ) | |
| **Petitioner/Appellant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-5036** |
| | ) | |
| **KAMERON HARVANEK, Warden,** | ) | |
| | ) | |
| **Respondent/Appellee.** | ) | |

### ANSWER BRIEF OF RESPONDENT/APPELLEE

Respondent/Appellee, Kameron Harvanek, Warden ("Respondent"), by and through Tessa L. Henry, Assistant Attorney General, hereby submits the following response to Keith Earl Robinson's ("Petitioner") appeal from the denial of federal habeas corpus relief by the United States District Court for the Northern District of Oklahoma ("District Court").

### STATEMENT OF JURISDICTION

On January 30, 2020, Petitioner invoked the jurisdiction of the District Court pursuant to 28 U.S.C. § 2254 by filing a Petition for Writ of Habeas Corpus, which the District Court later determined to be timely (Corr. App. at 59-60, 121).[1] *See infra.*

---

[1] Respondent will refer to the Corrected Appendix as "Corr. App. at __." Although this Court's Rules direct parties to reference a volume number when citing to an appendix, the Corrected Appendix in this case only spans one volume; thus, to avoid redundancy, Respondent will omit the volume number in those citations. *See* 10th Cir. R. 28.1(A)(1). Respondent will also refer to Petitioner's Corrected Opening Brief as "Corr. Br. at __." Finally, unless otherwise noted, Respondent's citations

The District Court thereafter denied habeas relief in its Opinion and Order and subsequent Judgment on March 17, 2023 (Corr. App. at 120-74). However, the District Court granted Petitioner a certificate of appealability ("COA") on his ineffective-assistance-of-counsel claim, and Petitioner timely filed a Notice of Appeal (Corr. App. at 172-73, 175). The jurisdiction of this Court is therefore invoked pursuant to 28 U.S.C. §§ 1291 and 2253(c), as well as Fed. R. App. P. 4(a). *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).[2]

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

"[W]hether trial counsel provided constitutionally ineffective assistance, in violation of [Petitioner]'s Sixth Amendment right to the effective assistance of counsel, as alleged in claim four" of the Petition for Writ of Habeas Corpus (Corr. App. at 173).

## STATEMENT OF THE CASE

### A.     Relevant Facts:

At around 12:40 p.m., on June 27, 2013, Renee White, who lived with her parents at a home on Oak Avenue in Bartlesville, Oklahoma, was home alone when

---

refer to each document's original pagination, as opposed to the CM/ECF header pagination.

[2] Petitioner states that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 2241 (Corr. Br. at 1). While § 2241 is one of the statutes that generally grants this Court the power to issue writs of habeas corpus, the more fitting statute invoking this Court's *jurisdiction* is § 2253.

2

she heard a strange noise coming from the back area of the house where the laundry

room was located (Supp. App. Vol. 1 at 237-39, 253).[3] After the noise continued,

Ms. White decided to investigate its source (Supp. App. Vol. I at 239-40). To Ms.

White, it sounded as though someone were trying to kick through the back door—

the noise was a very loud "banging" noise and was so loud it "shook the house"

(Supp. App. Vol. I at 240). Upon arriving at the back door of the house, Ms. White

encountered Petitioner,[4] who had kicked in the door and was standing mere feet

away from her inside the small laundry room (Supp. App. Vol. I at 240-41, 251-52).

---

[3] Contemporaneous with the filing of this Answer Brief, Respondent is also filing a Supplemental Appendix, comprised of three volumes. Respondent's Supplemental Appendix contains the pertinent state court transcripts and state and federal court filings—items that Petitioner *omitted* from his own Corrected Appendix—that Respondent believes are necessary for the disposition of this appeal. Thus, in the Statement of the Facts, Respondent refers to the jury trial transcripts contained within the Supplemental Appendix. *See* 10th Cir. R. 30.2(A)(1) ("An appellee who believes that the appellant's appendix omits items that should be included may file a supplemental appendix with the answer brief."). Respondent will refer to the Supplemental Appendix as "Supp. App. Vol. __ at __." Furthermore, Respondent will discuss Petitioner's inadequate Corrected Appendix in more detail below. *See* 10th Cir. R. 10.2, 10.4, and 30.1.

[4] Ms. White described Petitioner as about "5-8, slender build. His hair was about an inch thick, kind of coarse. He was wearing a white T-shirt, muscle type shirt, and black shorts and some type of tennis shoes," and "it looked like he could have been white, maybe black, half black or part black based on his hair . . . [t]he texture of hair. It looked like he could have some type of ethnic background besides just being white" (Supp. App. Vol. I at 241, 248-51, 255-58). Indeed, after the preliminary hearing in this case, Ms. White found photographs of Petitioner on Facebook to illustrate what she meant by "coarse" hair (Supp. App. Vol. I at 255-58, 261-62, 418-20). She did so because by the time of the preliminary hearing, Petitioner had shaved his head (Supp. App. Vol. I at 255).

Ms. White, scared and upset at seeing a stranger in her home, screamed and demanded that Petitioner leave (Supp. App. Vol. I at 242-43). Petitioner did not immediately comply with Ms. White's command, but instead stared at her for approximately twenty seconds as she continued to scream at him[5] (Supp. App. Vol. I at 243, 251-52). Thereafter, Petitioner ran out the back door and into a grassy alley-type thoroughfare that ran behind the houses in the neighborhood; Petitioner ran toward Maple Avenue and a nearby cemetery (Supp. App. Vol. I at 240, 243-45; Supp. App. Vol. II at 311). Ms. White then called 911 to report the crime (Supp. App. Vol. I at 245). Although nothing was taken from the home, the door was damaged (Supp. App. Vol I at 245, 251).

Bartlesville Police Officer Tyler Diedrich responded to the area of the Whites' home about 12:50 p.m. (Supp. App. Vol. I at 266-68). Officer Diedrich had been given a suspect description from dispatch, and he initially drove around the neighborhood seeking someone who might meet that description; he was unsuccessful, however (Supp. App. Vol. I at 269-70). Back at the Whites' home, Officer Diedrich noticed fresh damage to the back door consistent with the door having been forced open or kicked in (Supp. App. Vol I at 270-71). A few weeks

---

[5] It was later revealed that Petitioner has a hearing impairment in one of his ears (Supp. App. Vol. I at 283).

later, in July 2013, Ms. White identified Petitioner[6] as the burglar from a photographic lineup prepared by case agent Detective Nathan Mellen (Supp. App. Vol. I at 246-47, 278-81; Supp. App. Vol. II at 417, 421).

At trial, Petitioner maintained his innocence and presented multiple witnesses in an attempt to demonstrate he was not the burglar in this case. In particular, Petitioner presented witnesses who testified that at the time in question, about 12:40 p.m. on June 27, 2013, Petitioner was at home and surrounded by family members rather than burglarizing Ms. White's home. At the time of the burglary, Petitioner lived in a house on Maple Avenue[7] next door to his grandmother, Jean Sanders, in a home Petitioner shared with his stepfather, Eddie Bridges; his mother, Tammy Bridges; his fiancée, Darian Grayson; and Petitioner's and Ms. Grayson's young child (Supp. App. Vol. I at 281; Supp. App. Vol. II at 303-04, 308-10, 312-16, 323-27, 334, 338-39). Ms. Grayson was also pregnant at the time with their second child (Supp. App. Vol. II at 330, 333-34). According to Petitioner's family members, at the time of the burglary Petitioner was helping his stepfather install an air conditioner unit at the house they all shared together after their previous cooling system ceased

---

[6] Ms. White also identified Petitioner as the burglar at trial (Supp. App. Vol. I at 247-48).

[7] Significantly, Petitioner and his family lived in front of the very same alley that ran behind Ms. White's house (Supp. App. Vol. II at 311-12, 319, 329). Petitioner lived about a block and a half from Ms. White, which was about a walking distance of five minutes or so (Supp. App. Vol. II at 311-12, 319, 329).

functioning (Supp. App. Vol. II at 308-09, 315-18, 325-27). Indeed, Petitioner's family members insisted there was *no way* Petitioner could have slipped out of their sight—even to use the restroom—for a few minutes on the afternoon of June 27, 2013 (Supp. App. Vol. II at 310-12, 315-16, 326-31, 334-35, 338-41).

Furthermore, in addition to presenting testimony that he was at home, Petitioner also presented testimony that he did not match the description of the burglar and that someone else was seen running in the alley that day. In particular, Ms. Sanders, Petitioner's grandmother, who, again, lived next door to Petitioner, testified that she noticed an unknown man in the alleyway between noon and 12:30 on June 27, 2013, who met the general description of the burglar given by Ms. White—this man apparently attempted to climb Ms. Sanders's fence (Supp. App. Vol. II at 303-06, 312). According to Ms. Sanders, she summoned Petitioner from next door while he was working on the air conditioner, and Petitioner "ran him off" (Supp. App. Vol. II at 304-09). Petitioner's family members also testified that Petitioner was shirtless that day and was only clothed in a pair of blue and white shorts (Supp. App. Vol. II at 308, 319-20, 330, 335-36). Further, Ms. Grayson, Petitioner's fiancée, testified that Petitioner has "a lot of tattoos" on his neck, chest, arms, and hands that are visible and noticeable when he wears any type of sleeveless shirt (Supp. App. Vol. II at 335-37). Finally, Ms. Tammie Chidester, a close friend of Petitioner and his family, testified that she was sitting on her porch at her mother's

house on the afternoon of June 27, 2013, when she saw Mr. Charles Fouts, Jr., clad in a sleeveless, white shirt and black shorts, running down the alley by the local cemetery (Supp. App. Vol. II at 345-49, 353-55, 422).[8] Ms. Chidester suspected that Mr. Fouts was somehow involved in the burglary of Ms. White's home (Supp. App. Vol. II at 422).

Other facts will be discussed as they become relevant.

**B.    Procedural History:**

Petitioner is incarcerated pursuant to a Judgment and Sentence obtained in the District Court of Washington County, Case No. CF-2013-280, wherein Petitioner was found guilty by a jury of one count of Burglary in the First Degree, in violation of OKLA. STAT. tit. 21, § 1431 (2011). Petitioner's jury found him guilty after former conviction of two or more felonies and recommended a sentence of imprisonment for twenty-three years, plus a $500.00 fine. The state trial court thereafter sentenced Petitioner consistent with the jury's verdict (Corr. App. at 6).

On July 13, 2015, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's conviction and sentence on direct review in *Keith Earl Robinson v. The State of Oklahoma*, OCCA Case No. F-2014-201 (Okla. Crim. App.

---

[8] Despite being confronted with evidence that she was in jail until about 1:30 p.m. on June 27, 2013 (when the burglary actually occurred around 12:40 p.m.), Ms. Chidester maintained her story that she saw Mr. Fouts running in the alley that afternoon (Supp. App. Vol. II at 355-60, 422-24). Mr. Fouts, unlike Petitioner, is partially bald with thin hair (Supp. App. Vol. II at 425-26).

July 13, 2015) (unpublished) (Corr. App. at 6-17). Petitioner did not seek a writ of *certiorari* to the United States Supreme Court, although he did unsuccessfully attempt to seek state post-conviction relief multiple times (Corr. App. at 56-59 (Respondent's discussion of Petitioner's various state court filings), 121).

On January 30, 2020, Petitioner, appearing *pro se*, filed his Petition for Writ of Habeas Corpus ("Petition") in the District Court (Corr. App. at 59-60). Although Respondent subsequently sought to have Petitioner's Petition dismissed as untimely, the District Court ultimately concluded that Petitioner was entitled to multiple periods of equitable tolling that rendered his Petition timely, and the District Court ordered Respondent to respond to the merits of Petitioner's Petition (Corr. App. at 59-60, 121 n.4). Thereafter, on March 17, 2023, following a Response on the merits by Respondent, United States District Judge Gregory K. Frizzell entered an Opinion and Order denying Petitioner's Petition in its entirety (Corr. App. at 120-74). However, the District Court ultimately concluded that "reasonable jurists might debate th[e District] Court's assessment of [Petitioner]'s ineffective-assistance-of-trial counsel claim" (Corr. App. at 172). Therefore, the District Court issued a COA concerning "whether trial counsel provided constitutionally ineffective assistance, in violation of [Petitioner]'s Sixth Amendment right to the effective assistance of counsel, as alleged in claim four" of the Petition (Corr. App. at 173).

Petitioner, now appearing through counsel, Debra K. Hampton, filed his

Corrected Brief in this Court on May 15, 2023. The instant Answer Brief is offered on behalf of Respondent.

## SUMMARY OF THE ARGUMENT

In his sole ground for relief, Petitioner claims that his trial counsel rendered ineffective assistance of counsel during Petitioner's trial for Burglary in the First Degree (Corr. Br. at 9, 12-21). He further states that the OCCA's resolution of this claim on direct appeal was objectively unreasonable. However, Petitioner's claim lacks merit for multiple reasons.

*First*, Petitioner has abandoned and waived two of the three subclaims contained within the District Court's COA by failing to present *any* argument with respect to these subclaims. While Petitioner briefly mentions these subclaims as a matter of background with respect to his ineffective-assistance-of-counsel claim, he does not engage with these subclaims whatsoever. As a result, this Court should decline to consider those waived and abandoned subclaims.

*Second*, Petitioner's argument with respect to the remaining subclaim—that trial counsel exhibited "general ineptitude" during Petitioner's trial—is so ambiguous, perfunctory, and nonsensical so as to render it waived under this Court's Rules and precedent. Indeed, far from presenting a cogent argument, Petitioner adopts wholesale portions of the District Court's Opinion and Order—the very decision he is now seeking to overturn on appeal. This Court should decline to

consider Petitioner's "argument" with respect to this remaining subclaim.

*Third*, Petitioner should be deemed to have waived appellate review due to his failure, in violation of this Court's Rules, to provide this Court with a sufficient record. Indeed, it is unimaginable how Petitioner expects this Court to review his ineffective-assistance-of-counsel claim, and the OCCA's resolution of it, without the record that was before the OCCA at the time it adjudicated his claim on the merits. Petitioner's failure to provide this Court with an adequate record, at his own peril, should exempt him from appellate review.

*Fourth*, Petitioner has failed to overcome his onerous burdens under 28 U.S.C. § 2254(d) and *Strickland v. Washington*, 466 U.S. 668 (1984), by failing to demonstrate that the OCCA's decision was an unreasonable application of *Strickland* or involved an unreasonable determination of the facts. Other than a forfeited argument concerning the OCCA's merits adjudication of his claim, Petitioner makes little to no effort to overcome such onerous burdens, nor does he demonstrate that no fairminded jurist could agree with the OCCA's decision. As a result, Petitioner is not entitled to relief.

Accordingly, habeas relief should be denied, and the District Court's ruling should be affirmed.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief with respect to a claim adjudicated on the merits by a state court only if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d)(1) applies to questions of law as well as mixed questions of law and fact. *Gilson v. Sirmons*, 520 F.3d 1196, 1233 (10th Cir. 2008) ("[W]e agree . . . that [the claim here] is a mixed question of law and fact and is thus reviewable under § 2254(d)(1)"). Section 2254(d)(2) applies to questions of fact. *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006).

For a state court to adjudicate a claim on the merits and receive deference, it is not necessary that the court provide an opinion explaining its reasoning. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be *presumed* that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99 (emphasis

added). Further, "a state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d)." *Id.* at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was *no reasonable basis* for the state court to deny relief." *Id.* (emphasis added). This same *Richter* presumption applies when a state court opinion addresses *some* but *not all* of a defendant's claims. *Johnson v. Williams*, 568 U.S. 289, 298 (2013). Thus, in such a case, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ." *Id.* at 301.

The threshold question for this Court on federal habeas corpus review is whether a petitioner seeks to apply a rule of law that was "clearly established" by the Supreme Court at the time his or her conviction became final. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). If a clearly established rule of federal law is implicated, however, then this Court must decide whether the state court's decision was contrary to, or an unreasonable application of, that clearly established rule of federal law. *See id.* A state court decision is contrary to clearly established federal law, as determined by the Supreme Court, when it applies a rule that contradicts the governing law set forth in the Supreme Court's cases or decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

12

Further, a state court decision involves an unreasonable application of clearly established federal law, as determined by the Supreme Court, when the state court correctly identifies the governing legal principle but applies it to the facts of the particular case in an unreasonable manner. *See Valdez v. Bravo*, 373 F.3d 1093, 1096 (10th Cir. 2004); *Gilbert v. Mullin*, 302 F.3d 1166, 1171 (10th Cir. 2002). The Supreme Court has explained as follows regarding the "unreasonable application" clause of § 2254(d):

> In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, *that application must also be unreasonable.*

*Williams*, 529 U.S. at 411 (emphasis added).

The Supreme Court has further held that "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Likewise, this Court has stated that federal courts

> may issue the writ only when the petitioner shows there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents. Thus, even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable. If this standard is difficult to meet—and it is—that is because it was meant to be. Indeed, AEDPA stops just short of

13

> imposing a complete bar on federal court relitigation of claims already
> rejected in state proceedings. Accordingly, we will not lightly conclude
> that a State's criminal justice system has experienced the extreme
> malfunction for which federal habeas relief is the remedy.

*Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (alterations adopted) (internal

quotation marks and citations omitted). *See also White v. Woodall*, 572 U.S. 415,

417 (2014) (section 2254(d) is "a provision of law that some federal judges find too

confining, but [it is a provision] that all federal judges must obey").

Moreover, state court's factual determinations are also granted a substantial

amount of deference on habeas review. *Id.* A federal habeas court may not grant

relief under § 2254(d)(2) merely because it does not agree with a state court's factual

determinations. "We may not characterize these state-court factual determinations

as unreasonable 'merely because [we] would have reached a different conclusion in

the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (quoting *Wood*

*v. Allen*, 558 U.S. 290, 301 (2010)). "If [r]easonable minds reviewing the record

might disagree about the finding in question, on habeas review that does not suffice

to supersede the [state] court's . . . determination." *Brumfield*, 576 U.S. at 314

(internal quotation marks omitted) (quoting *Wood*, 558 U.S. at 301; *Rice v. Collins*,

546 U.S. 333, 341-42 (2006)).

Also, significantly, state court determinations of fact "shall be presumed

correct" *unless* rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Thus, a state court's decision cannot be said to be based on an unreasonable

14

determination of the facts until a petitioner has shown by clear and convincing evidence that the state court's factual determination was incorrect. *See Black v. Workman*, 682 F.3d 880, 896-97 (10th Cir. 2012) (refusing to grant relief under § 2254(d)(2) because the petitioner had failed to present clear and convincing evidence to rebut a state court's factual finding).

Bearing in mind the applicable standard of review, Respondent will address Petitioner's ground for relief below.

## ARGUMENT AND AUTHORITY

### GROUND FOR RELIEF

**EVEN ASSUMING PETITIONER HAS NOT WAIVED THE ONLY CLAIM PROPERLY BEFORE THIS COURT ON APPEAL, THE OCCA'S REJECTION OF PETITIONER'S INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIM ON DIRECT APPEAL WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW, NOR WAS IT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

In his sole ground for relief, Petitioner challenges the OCCA's rejection of his ineffective-assistance-of-counsel claim on direct appeal. In particular, the argument that trial counsel exhibited "general ineptitude" at trial (Corr. Br. at 14-21). However, as shown below, in addition to waiving and forfeiting multiple arguments, Petitioner has failed to show that the OCCA's rejection of his ineffective-assistance-of-counsel claim on direct appeal was unreasonable under § 2254(d). Ultimately, the

OCCA's decision was neither contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of fact in light of the record. Petitioner cannot show that no fairminded jurist could agree with the OCCA's decision. Accordingly, habeas relief must be denied.

### A. Petitioner has Abandoned and Waived All, or at Least Part of, the Claim Properly Before this Court:

As an initial matter, before proceeding to the merits of Petitioner's claim, Respondent asserts that Petitioner has: 1) abandoned and waived two of the three subclaims contained within the District Court's COA; 2) waived the "general ineptitude" subclaim of the COA due to insufficient argument; and 3) waived appellate review by failing to provide an adequate record to this Court. As a result of these waivers, this Court should affirm the District Court's denial of habeas relief.

#### 1. Petitioner has Abandoned and Waived All but One of the Three Subclaims Contained Within the District Court's COA:

As previously noted, the District Court granted Petitioner a COA on the *entirety* of Ground IV of his Petition (Corr. App. at 172-73). Notably, Ground IV, Petitioner's ineffective-assistance-of-counsel claim (and therefore, the COA itself), contained multiple subclaims, which the District Court summarized as such:

> [Petitioner] contends, much like he did on direct appeal, that trial counsel performed deficiently and prejudicially by (1) demonstrating "general ineptitude" during his examination of several state witnesses, (2) failing "to object to the trial court's investigation and participation in the impeachment of Tammie Chidester" and failing to investigate "the testimony of the other witnesses in order to flesh out the

inconsistencies" in their testimony, and (3) failing to request jury instructions on the defense of alibi and the lesser included offense of breaking and entering without permission.

(Corr. App. at 157). While Petitioner's Petition to the District Court contained argument and analysis as to each of these subclaims (Corr. App. at 43-49), Petitioner's Corrected Brief to this Court *does not*.

Namely, while Petitioner *briefly mentions* all three subclaims contained within the COA as a matter of background—and includes a stray (and nonsensical) sentence regarding subclaim (2) within the body of the Corrected Brief—Petitioner fails to engage with subclaims (2) and (3) and omits *any* argument or analysis with respect to these subclaims (Corr. Br. at 7 (subclaims (2) and (3) mentioned as a matter of background in the "Statement of the Issue"), 8 (subclaims (2) and (3) mentioned as a matter of background in the "Introduction"), 14 (stray sentence pulled from District Court's Opinion and Order stating, "Next, the District Court analysis regarding the reasonableness of OCCA's decision, 'that even if trial counsel performed deficiently as to his investigation and presentation of Ms. Chidester's testimony, [Appellant] did not establish *Strickland* prejudice' [Appx. 160]" (alterations in original))). Instead, Petitioner spends the bulk of his Corrected Brief discussing subclaim (1), trial counsel's alleged "general ineptitude" during Petitioner's trial (Corr. Br. at 14-21).

Ultimately, as a result of Petitioner's failure to include *any* argument and authority, citations to the state court record, or analysis with respect to subclaims (2) and (3) of the COA, those subclaims have been abandoned and therefore *waived*. *See Lockett v. Trammell*, 711 F.3d 1218, 1230 (10th Cir. 2013); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011); *Best v. Culliver*, No. 04-14285, 165 F. App'x 740, 741 (11th Cir. Jan. 27, 2006) (unpublished)[9]; *Hart v. Johnson*, No. 98-41113, 180 F.3d 265, 1999 WL 301888 (5th Cir. May 5, 1999) (unpublished); *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987). This is entirely consistent with this Court's well-established rule that any argument not contained—or not adequately presented—within an appellant's opening brief is deemed *waived. See, e.g.*, *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020); *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief"); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004); *Tran v. Tr. of State Coll. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004); *Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000); *United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995); *Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir.

---

[9] All unpublished cases cited within this Answer Brief are cited pursuant to Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1994); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (discussing "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). *See also* Fed. R. App. P. 28(a)(8)(A) (requirements for an appellant's opening brief, including a requirement that an appellant's argument must contain his or her "contentions and the reasons for them, with citations to the authorities and parts of the record").

Because Petitioner's Corrected Brief merely mentions subclaims (2) and (3) of the COA without marshaling any argument, such subclaims are abandoned and waived. Thus, this Court must decline to consider them.

> 2.    *With Respect to the Subclaim Petitioner has not Abandoned, Petitioner's Argument is so Ambiguous and Inadequately Developed as to Render the Subclaim Waived:*

Next, aside from abandoning and waiving subclaims (2) and (3) of the District Court's COA, Petitioner has also waived subclaim (1) due to his ambiguous, conclusory, and incomprehensible discussion of the issue.

Except for a few stray sentences of fleeting argument, the majority of Petitioner's Corrected Brief is nothing more than a summary of the lower court proceedings, and Respondent can glean no cogent affirmative argument from Petitioner's Corrected Brief. Indeed, if the bulk of Petitioner's recitation of the facts and argument section sounds familiar, it is because Petitioner lifted large portions of his facts and argument *directly* (and nearly verbatim) from the District Court's

Opinion and Order—the very decision he is now attempting to challenge on appeal. *Compare* Corr. Br. at 1-6, *with* Corr. App. at 129-35 (*pages* of nearly verbatim recitation of the facts lifted from District Court's Opinion and Order); *Compare* Corr. Br. at 10, *with* Corr. App. at 156 (portions of *Strickland* standard lifted from District Court's Opinion and Order); *Compare* Corr. Br. at 12-13, *with* Corr. App. at 157-58 (discussion of OCCA opinion lifted from District Court's Opinion and Order); *Compare* Corr. Br. at 13-14, *with* Corr. App. at 159-60 (discussion of what a federal district court considers when adjudicating a *Strickland* claim under AEDPA lifted from District Court's Opinion and Order); *Compare* Corr. Br. at 14-21, *with* Corr. App. at 160-65 (*pages* of analysis, including some headings, lifted nearly verbatim from District Court's Opinion and Order)).

Moreover, aside from the large chunks of text borrowed directly from the District Court's Opinion and Order, there is very little, if any, discussion regarding the alleged errors in counsel's performance *or* in the OCCA's opinion. Moreover, that discussion amounts to nothing more than conclusory statements that error occurred without any analysis (Corr. Br. at 8 ("Appellant claims that the results of the proceedings would have likely been different had Trial Counsel rendered effective assistance of counsel and thus Appellant was prejudiced by counsel's deficient performance. Appellant claims that the Oklahoma Court of Criminal Appeals (OCCA) analysis of his ineffective assistance of counsel claim was

20

objectively unreasonable . . . ."), 12 ("Petitioner maintains that the OCCA's opinion violates 28 U.S.C. § 2254 (d)(1-2)."), 15 ("Appellant contends counsel's deficiencies as to examining State witnesses and failing to adequately prepare defense witnesses prejudiced him by placing prejudicial information about his prior criminal history before the jury."), 15 ("Appellant argues Trial Counsel's cross-examination of State witnesses demonstrated an incompetence falling below professional norms."), 20 ("Appellant argues the result created undue prejudice to Appellant and thus the OCCA's failure to address this claim does not prohibit this Court from granting relief."), 20-21 ("The District Court should have concluded that prejudice ensued as a result of Counsel's deficient performance because there was no reasonable strategy."), 21 ("Appellant argues that the OCCA's adjudication of Petitioner' claims.")[10]). In other words, Petitioner has not marshaled any argument on appeal that can overcome his onerous burdens under *Strickland* and § 2254(d). He has neither engaged with the fairminded jurist standard nor even attempted to show how the OCCA's decision was unreasonable. Indeed, reading the opening brief, it is not even clear what Petitioner's theory of prejudice is—the particular *Strickland* prong on which the District Court found his ineffective-assistance-of-counsel claim failed, as discussed more below. *See infra.*

---

[10] Respondent has not omitted any portion of this sentence—it is, indeed, not even a complete thought in the closing sentence of the argument section in Petitioner's brief (Corr. Br. at 21).

Pursuant to the Federal Rules of Appellate Procedure, an appellant's opening brief *must include* an argument containing the appellant's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ." Fed. R. App. P. 28(a)(8)(A). *See also Reedy*, 660 F.3d at 1274. However, as noted, Petitioner's Corrected Brief does nothing of the sort. Other than citing to the District Court's Opinion and Order, Petitioner does not cite any portions of the state court record, nor does he supply this Court with any argument and authority *supported by sufficient analysis*. And, consistent with the Federal Rules of Appellate Procedure, this Court has consistently held that arguments inadequately presented on appeal are deemed *waived*. *See, e.g.*, *Menzies v. Powell*, 52 F.4th 1178, 1227 (10th Cir. 2022); *Sawyers*, 962 F.3d at 1286; *United States v. Williams*, 790 F.3d 1059, 1087 n.2 (10th Cir. 2015); *Reedy*, 660 F.3d at 1275 ("Issues not adequately briefed will not be considered on appeal."); *Rojem v. Gibson*, 245 F.3d 1130, 1141 n.8 (10th Cir. 2001); *Thomas v. Gibson*, 218 F.3d 1213, 1220 n.4 (10th Cir. 2000). Indeed, on appeal,

> parties must do more than offer vague and unexplained complaints of error. "[P]erfunctory complaints [that] fail to frame and develop an issue [are not] sufficient to invoke appellate review." *Murrell v. Shalala,* 43 F.3d 1388, 1389 n.2. (10th Cir. 1994); *see also Hartmann v. Prudential Ins. Co. of America,* 9 F.3d 1207, 1212 (7th Cir. 1993) ("Failure to press a point (even if it is mentioned) and to support it with proper argument and authority forfeits it. . . ."); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) (noting the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

*Femedeer*, 227 F.3d at 1255.

With this well-established rule in mind, Respondent contends that Petitioner's argument regarding the OCCA's rejection of his "general ineptitude" claim is so perfunctory that it is insufficient to invoke appellate review and should be deemed waived. Further, importantly, as he is now represented by counsel, Petitioner cannot claim that he is entitled to liberal construction of his perfunctory argument. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Reedy*, 660 F.3d at 1274 ("If Plaintiffs were pro se, we would construe their pleadings liberally. But they are represented by counsel, and we expect attorneys appearing before this court to state the issues on appeal expressly and clearly, with theories adequately identified and supported with proper argument." (internal citation omitted)); *Rawle v. Wyoming Dep't Of Corr. State Penitentiary Warden*, No. 10-8021, 390 F. App'x 769, 773 n.4 (10th Cir. Aug. 3, 2010) (unpublished); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Sullivan v. Rios*, No. CIV-15-0067-M, 2015 WL 4926475, at *4 (W.D. Okla. June 12, 2015), *report and recommendation adopted*, No. CIV-15-67-M, 2015 WL 4937431 (W.D. Okla. Aug. 18, 2015) (unpublished) ("Because the petition is counsel's work-product, it must be read as written.").[11]

---

[11] Not only is this Court's general rule that counseled litigants are not entitled to liberal construction well-established, but counsel for Petitioner has repeatedly been so warned by this Court and all three federal district courts in Oklahoma. Thus, there is no excuse for counsel's failure to marshal proper argument here, and subclaim (1)

Because Petitioner's Corrected Brief contains an inadequate, ambiguous, and perfunctory argument regarding the OCCA's rejection of his "general ineptitude" claim (subclaim (1) of the COA), Petitioner's argument should be deemed waived.

---

should be deemed waived. *See, e.g.*, *Huey v. Kunzweiler*, No. 20-5038, 847 F. App'x 530, 533 n.3 (10th Cir. Feb. 25, 2021) (unpublished); *Foreman v. Elam*, No. 19-7020, 796 F. App'x 529, 530 (10th Cir. Dec. 6, 2019) (unpublished); *Maupin v. Harpe*, No. CIV-21-630-D, 2023 WL 1774991, at *3 (W.D. Okla. Jan. 9, 2023), *report and recommendation adopted*, No. CIV-21-630-D, 2023 WL 1769264 (W.D. Okla. Feb. 3, 2023) (unpublished); *Hill v. Farris*, No. CIV-21-335-C, 2022 WL 16954832, at *17 (W.D. Okla. Oct. 7, 2022), *report and recommendation adopted*, No. CIV-21-335-C, 2022 WL 16951674 (W.D. Okla. Nov. 15, 2022) (unpublished); *Ramos v. Rankins*, No. 19-CV-112-RAW-KEW, 2022 WL 4352738, at *17 n.10 (E.D. Okla. Aug. 29, 2022), *certificate of appealability denied*, No. 22-7045, 2023 WL 2924626 (10th Cir. Apr. 13, 2023) (unpublished); *Loya v. Whitten*, No. CIV-20-922-C, 2021 WL 3477710, at *4 n.5 (W.D. Okla. June 7, 2021), *report and recommendation adopted*, No. CIV-20-922-C, 2021 WL 3475580 (W.D. Okla. Aug. 6, 2021), *certificate of appealability denied*, No. 21-6102, 2022 WL 946939 (10th Cir. Mar. 30, 2022) (unpublished); *Barry v. Braggs*, No. CIV-19-587-SLP, 2021 WL 8972014, at *8 (W.D. Okla. Jan. 28, 2021), *report and recommendation adopted sub nom. Barry v. Whitten*, No. CIV-19-587-SLP, 2022 WL 2329141 (W.D. Okla. June 28, 2022) (unpublished); *Rosales v. Pettigrew*, No. CIV-20-804-HE, 2020 WL 8513827, at *1 n.2 (W.D. Okla. Dec. 15, 2020), *report and recommendation adopted*, No. CIV-20-0804-HE, 2021 WL 165125 (W.D. Okla. Jan. 19, 2021) (unpublished); *Williams v. Dowling*, No. 19-CV-0530-GKF-FHM, 2020 WL 3865078, at *4 n.5 (N.D. Okla. July 8, 2020) (unpublished); *Huey v. Kunzweiler*, No. 20-CV-0021-CVE-FHM, 2020 WL 1325359, at *1 n.1 (N.D. Okla. Mar. 20, 2020) (unpublished); *Foreman v. Elam*, No. CIV 18-071-RAW-SPS, 2019 WL 1413755, at *1 (E.D. Okla. Mar. 28, 2019) (10th Cir. 2019) (unpublished); *Madison v. Allbaugh*, No. CIV 18-243-RAW-KEW, 2019 WL 1302558, at *1 (E.D. Okla. Mar. 21, 2019) (unpublished); *Gonzales v. Martin*, No. CIV-18-297-R, 2018 WL 4494993, at *1 (W.D. Okla. Sept. 19, 2018) (unpublished); *Jacobs v. Allbaugh*, No. CIV-17-1327-D, 2018 WL 6333663, at *9 n.4 (W.D. Okla. July 16, 2018), *report and recommendation adopted*, No. CIV-17-1327-D, 2018 WL 4963079 (W.D. Okla. Oct. 15, 2018) (unpublished).

3.   *Petitioner has Waived Appellate Review by Providing an Inadequate Record to this Court:*

Finally, in addition to abandoning subclaims (2) and (3) and waiving subclaim (1), Petitioner has also waived appellate review by failing to provide an adequate record to this Court in order for it to review the OCCA's decision.

According to this Court's Rules, it is a counseled appellant's *duty* to provide this Court with an appendix "that is sufficient for considering and deciding the appellate issues." 10th Cir. R. 10.4(A), 30.1(B)(1). *See also* Fed. R. App. P. 30 (an appellant must provide an appendix containing *relevant* portions of the record). Logically, because this Court reviews a district court's § 2254(d) analysis of a state court decision *de novo*, this Court should have the record that was before the district court available to it. *See (Donald) Grant v. Royal*, 886 F.3d 874, 889 (10th Cir. 2018) (discussing *de novo* review); *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). Moreover, because this Court, pursuant to § 2254(d), is "limited to the record that was before the state court that adjudicated the claim on the merits" and "what the state court knew and did," this Court should similarly have the record that was available to the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

Also, according to this Court's Rules, it is not this Court's duty to remedy a counseled appellant's inadequate appendix, and "[w]hen the party asserting an issue fails to provide a record or appendix sufficient for considering that issue, the court may decline to consider it." 10th Cir. R. 10.4(B), 30.1(B)(3). And, this Court has

specifically held, consistent with its Rules, that "[a]n appellant who provides an inadequate record does so *at his peril*." *Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949, 955 (10th Cir. 1996) (emphasis added). *See also United States v. Vandemerwe*, No. 09-4186, 405 F. App'x 344, 346 (10th Cir. Dec. 16, 2010) (unpublished); *Travelers Indem. Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1121 (10th Cir. 2003) (collecting cases and noting that "[t]hese rules are not empty gestures," and this Court has "repeatedly enforced them").

Here, Petitioner's Corrected Appendix is a single volume and spans a mere 178 pages (Corr. App. at 1-178). Petitioner's Corrected Appendix contains the docket summary from the lower federal court proceedings, the OCCA Summary Opinion at issue, Petitioner's Petition, Respondent's Response to the Petition (*without* the numerous exhibits originally attached by Respondent), the District Court's Opinion and Order and Judgment, and Petitioner's Notice of Intent to Appeal (Corr. App. at 1-178). Conspicuously absent from the Corrected Appendix are the state court transcripts, state court original record, and the parties' filings to the OCCA. It is truly unimaginable how Petitioner expects this Court to review the District Court's and the OCCA's decisions without presenting this Court *with what the District Court and the OCCA considered*. For example, Petitioner's claim of "general ineptitude" relies heavily upon trial counsel's behavior at trial. However, it is impossible for this Court to review the OCCA's adjudication of that claim without

26

being able to review the transcripts of Petitioner's trial. And, because this Court is reviewing the District Court's rejection of Petitioner's habeas Petition *de novo*, this Court cannot solely rely upon the District Court's recitation of the facts and issues. Thus, by relying wholesale upon the District Court's Opinion and Order, Petitioner has provided an inadequate record and thus waived this Court's appellate review.

Ultimately, because Petitioner has provided this Court with a wholly inadequate record at his own peril, this Court should decline to consider Petitioner's claim of ineffective assistance of counsel.[12]

    4.   *Conclusion:*

As shown, Petitioner has abandoned and waived all, or at least part of, the District Court's COA before this Court by: 1) failing to make arguments with respect

---

[12] Out of an abundance of caution (in the event this Court decides to grant Petitioner appellate review), Respondent is providing this Court with a more complete record, *i.e.*, the record that was available to the OCCA and the District Court. *See* 10th Cir. R. 30.2(A)(1) ("An appellee who believes that the appellant's appendix omits items that should be included may file a supplemental appendix with the answer brief."). However, Respondent nonetheless contends that this should not cure Petitioner's waiver of his ineffective-assistance-of-counsel claim.

Respondent's Supplemental Appendix spans three volumes and includes the state court transcripts, the jury trial exhibits, the original record, and the parties' briefs to the OCCA (Supp. App. Vols. I-III). Furthermore, Respondent provides Petitioner's Traverse (reply) to Respondent's Response that was filed in the lower federal court proceedings (Supp. App. Vol. III). With respect to Respondent's Response Exhibits 1-23 that Petitioner omitted from his Corrected Appendix, Respondent declines to include those in his Supplemental Appendix because they are either portions of the state court record/transcripts *or* are irrelevant to the claim currently before this Court (such as Petitioner's post-conviction filings).

to subclaims (2) and (3) of the COA; 2) failing to present adequate argument with respect to subclaim (1); and 3) and failing to provide an adequate record for appellate review. Considering Petitioner's failures, this Court should find waiver where appropriate and affirm the District Court's denial of habeas relief.

**B.     Petitioner has Failed to Show that *No* Fairminded Jurist Could Agree with the OCCA's Adjudication of his Trial Counsel Claim:**

Assuming this Court finds that Petitioner has not waived subclaim (1) ("general ineptitude") of the District Court's COA, Petitioner is nonetheless not entitled to relief when considering the merits of this remaining subclaim. In short, Petitioner entirely fails to show that no fairminded jurist could agree with the OCCA's rejection of Petitioner's ineffective-assistance-of-counsel claim. Relief must therefore be denied.

*1.     Petitioner's Ineffective-Assistance-of-Counsel Claim on Direct Appeal, and the OCCA's Rejection of the Claim:*

As previously noted, Petitioner raised a multi-part claim of ineffective assistance of trial counsel in Proposition VI of his Brief of Appellant on direct appeal (Supp. App. Vol. III at 606-16). In particular, Petitioner claimed that counsel was ineffective for exhibiting general ineptitude during trial, failing to investigate and object with respect to defense witness Tammie Chidester, failing to object to the trial court's instruction on monetary fines, failing to request an instruction on the defense of alibi, and failing to request a lesser included instruction (Supp. App. Vol. III at

606-16). Specifically with respect to the "general ineptitude" subclaim, Petitioner argued that trial counsel exhibited a "bumbling" performance in three main ways: 1) that trial counsel allegedly used improper cross-examination techniques during trial by improperly impeaching Renee White, by questioning Officer Tyler Diedrich about hearsay statements in his report, and by improperly questioning Officer Diedrich about a report he did not write; 2) that trial counsel allegedly nearly brought out evidence from Detective Nathan Mellen that the photograph of Petitioner used in the photographic lineup was taken while Petitioner was in jail; and 3) that trial counsel allegedly failed to advise defense witnesses not to reveal Petitioner had a criminal record (Supp. App. Vol. III at 608-09)

However, in a well-reasoned decision, the OCCA denied relief as to all subclaims of Proposition VI:

> Finally, relief is unwarranted for the various ineffective assistance of trial counsel claims set forth in Proposition VI. To prevail on an ineffective assistance of counsel claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See also Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 787-88, 178 L. Ed. 2d 624 (2011) (summarizing the *Strickland* two-part test). *Appellant does not show deficient performance and prejudice with any of his ineffective assistance of counsel claims. Only Appellant's challenge to trial counsel's handling of Tammie Chidester's testimony requires extended discussion.*[13] As discussed above in connection with

---

[13] As discussed more below, the OCCA's stated decision not to expressly discuss all portions of the ineffective-assistance-of-counsel claim was entirely reasonable under § 2254(d). *Williams*, 568 U.S. at 298; *Richter*, 562 U.S. at 98. *See also infra*.

Proposition II, the trial court did not abuse its discretion with the inquiry of Chidester, advising her of the jail records in light of her palpable perjury. Assuming *arguendo* deficient performance from defense counsel's investigation (or non-investigation) of Chidester's jail records, Appellant fails to show *Strickland* prejudice. Notably, Appellant does not argue that trial counsel was ineffective for presenting Chidester as a witness. It is therefore entirely unclear how Appellant could ever show *Strickland* prejudice based on counsel's failure to discover the jail records prior to trial as Appellant does not suggest how trial counsel could have "drawn the sting" of the jail records.

Moreover, even if trial counsel's performance was deficient for presenting Chidester's testimony, Appellant fails to show *Strickland* prejudice in light of the victim's unequivocal identification testimony[2] along with the dubious alibi testimony from Appellant's four family members. Simply, this is not a case where Tammie Chidester's discredited testimony undermined an otherwise viable alibi defense. Rather, the alibi testimony from Appellant's relatives was largely discredited before Chidester ever took the stand. The family members Appellant presented to establish an alibi were inherently biased—a fact the prosecutor highlighted on cross examination (Tr. II 14-15, 24, 33-34, 49)—and their collective testimony was inconsistent on material issues like whether Appellant responded to the disturbance in his grandmother's backyard and whether money was tight for Appellant at the time of the burglary (Tr. II 9-12, 16, 36-37, 45). Appellant's family members all agreed that he was approximately a block and a half (a short walk) away from the victim's house when the burglary occurred. Thus, even crediting the defense testimony that Appellant was assisting with the air conditioner installation the day of [the] burglary, he had more than sufficient opportunity to commit the crime considering the close proximity of the victim's house to his location.

[2] The State presented strong evidence bolstering the reliability of the victim's identification testimony. On July 17, 2013, Detective Nathan Mellen showed White a six-man photo lineup containing a photo of Appellant. The victim positively identified Appellant as the burglar in her utility room (Tr. I 204-05, 236-39; State's Ex. 1). After the preliminary hearing in this case in October 2013, the

victim located additional photos of Appellant which she supplied to police. She printed these photos from Appellant's Facebook page to better illustrate her description of the coarseness of Appellant's hair (Tr. I 207-09, 212-15; State's Exs. 2-3).

Detective Mellen discovered too that Appellant has a hearing impairment. This impairment is severe enough that the detective had to repeat things several times for Appellant during a conversation (Tr. I 241). The victim testified that Appellant did not react for nearly twenty (20) seconds to her yelling when she first encountered him in her utility room, and that Appellant stared at her as if he did not understand what she was saying (Tr. I 201). Hence, Detective Mellen's testimony concerning Appellant's hearing impairment also corroborated the victim's identification testimony.

Notable too was the incredible testimony of the family members that Appellant could not have left their sight even for ten minutes the day of the burglary. Eddie Bridges's attempt to bolster this testimony with his claim that he was unaware of Appellant ever shutting the door when Appellant used the bathroom served to cast suspicion on the testimony of Appellant's family members.[3] The failure of Appellant's mother, Tammy Bridges, to bring the receipt for the air conditioner, which she testified was in the possession of her mother-in-law, is of the same ilk. The receipt would have bolstered her contention that the air conditioner was installed the date of the victim's burglary. Despite the receipt being brought up by the prosecutor during Mrs. Bridges's preliminary hearing testimony, she still failed to bring it to court (Tr. II 27-28).[4] The totality of the family members' testimony allowed the jury to infer that their testimony was manufactured to help Appellant beat the burglary charge.

[3] On cross-examination, Appellant's step-father testified in pertinent part:

Q.    Okay. So I want to make sure we're clear, Mr. Bridges. [Appellant] was never out of your sight that entire day

31

|   |   |
|---|---|
|   | at all? |
| A. | No. |
| Q. | So he never went to the restroom the entire day? |
| A. | Yeah, but the restroom is right there. |
| Q. | Well, did you go to the bathroom with him? |
| A. | No. |
| Q. | Does he close the door when he goes to the bathroom? |
| A. | Not that I know of. |

(Tr. II 34).

[4] At trial, Tammy Bridges testified in pertinent part on cross-examination:

|   |   |
|---|---|
| Q. | And, Ms. Bridges, you're certain the date we're talking about is June 27th? |
| A. | Yes, I am. |
| Q. | We talked I think at the prelim, Ms. Bridges, about a receipt for the air conditioner. Did you ever track that down? |
| A. | She has it. The mother. |
| Q. | Your mother-in-law? |
| A. | We had to pay her back. We just couldn't do it all at once. |
| Q. | So that receipt, you don't know where it's at right now? |
| A. | She has it. |
| Q. | Well, today's the day, right? |
| A. | Well, nobody told me I had to bring it. |
| Q. | Okay. Well, we talked about it at the preliminary hearing that it was important, right? |
| A. | You didn't say it was important, you just told me that I needed it. |
| Q. | Okay. |
| A. | That's exactly what you said. |

32

> Q.    Okay. I guess I didn't use those exact
>        words but I said you probably needed
>        it, right?
> A.    Right.

(Tr. II 27-78).

> *All things considered, Appellant fails to show that trial counsel*
> *was ineffective. Relief must therefore be denied for Proposition VI.*

(Corr. App. at 13-16 (emphasis added) (footnote in brackets added) (alterations in

original)).[14]

> 2.    *Clearly Established Supreme Court Law:*

In *Strickland v. Washington*, the Supreme Court set forth the demanding

standard a petitioner must meet in order to raise a successful claim of ineffective

assistance of counsel:

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or . . . sentence has two
> components. *First, the defendant must show that counsel's*
> *performance was deficient*. This requires showing that counsel made
> errors so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. *Second, the*
> *defendant must show that the deficient performance prejudiced the*
> *defense*. This requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose result is reliable.
> Unless a defendant makes both showings, it cannot be said that the
> conviction or death sentence resulted from a breakdown in the
> adversary process that renders the result unreliable.

---

[14] While Petitioner has abandoned and waived the entirety of this trial counsel claim
except for the "general ineptitude" subclaim, Respondent still provides the entirety
of the OCCA's discussion of the ineffective-assistance-of-counsel claim to illustrate
its reasonable application of *Strickland* and to provide insight into its prejudice
analysis.

*Strickland*, 466 U.S. at 687 (emphasis added).

With respect to *Strickland*'s deficient performance prong, the reviewing court must give great deference to counsel's performance: "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. *See Williams v. Beto*, 354 F.2d 698, 706 (5th Cir. 1965). And, as the Supreme Court has noted, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690-91. *See also James v. Gibson*, 211 F.3d 543, 555 (10th Cir. 2000) ("Judicial scrutiny of counsel's performance is highly deferential."). Indeed, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. *See also Moore v. Marr*, 254 F.3d 1235, 1239-40 (10th Cir. 2001) ("Strategic or tactical decisions on the part of counsel are presumed correct unless they were completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." (internal citations and quotation marks omitted) (alteration adopted)). With respect to *Strickland*'s prejudice prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," as "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the

result of the proceeding." *Strickland*, 466 U.S. at 693 (internal citation omitted). Rather, "[t]he defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability *is a probability sufficient to undermine confidence in the outcome*." *Strickland*, 466 U.S. at 694 (emphasis added).

Importantly, the Supreme Court did not design this standard to be easily overcome. *Richter*, 562 U.S. at 105. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Even under *de novo* review, the standard is extremely deferential, and the reviewing court must avoid second-guessing counsel's decisions. *Richter*, 562 U.S. at 105. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (citing *Strickland*, 466 U.S. at 690). Moreover, under § 2254(d), establishing that a state court unreasonably applied *Strickland* is *even more difficult* to meet, as *Strickland* and § 2254(d) both demand *great deference*. *Id.* "The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Id.* (emphasis added). Further, establishing prejudice "does not require a showing that counsel's actions

'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable." *Id.* at 111-12 (internal citations omitted) (citing *Strickland*, 466 U.S. at 693, 697). Thus, "[c]ounsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (quotation marks omitted).

3. *Petitioner has Failed to Meet His Onerous Burdens Under* *Strickland* *and § 2254(d), as the OCCA's Decision was* *Reasonable:*

As will be shown, Petitioner cannot meet his onerous burdens under *Strickland* and § 2254(d). In reviewing Petitioner's Corrected Brief, Respondent can only glean two possible arguments from Petitioner's writings: 1) that the OCCA's failure to expressly discuss the "general ineptitude" portion of the claim was either not a merits adjudication *or* was unreasonable under § 2254(d); and 2) that the OCCA unreasonably applied *Strickland* by failing to find deficient performance and prejudice (Corr. Br. at 14-21). Neither of these arguments are meritorious. First, not only has Petitioner forfeited any argument about the lack of a merits adjudication, but the OCCA's decision to not expressly discuss parts of Petitioner's claim was not unreasonable. Second, the OCCA's application of *Strickland* was reasonable, and Petitioner has entirely failed to make any cogent arguments concerning *Strickland*'s prejudice prong. Petitioner is therefore not entitled to relief.

      *a.*      ***Petitioner's Argument that He is Entitled to Relief Because the OCCA Did Not Expressly Discuss the "General Ineptitude" Portion of His Claim is Without Merit:***

        i.      <u>Petitioner has Forfeited his Argument Regarding the Lack of a Merits Adjudication:</u>

In two separate portions of his Corrected Brief, Petitioner asserts that the OCCA's decision with respect to the allegations within subclaim (1) ("general ineptitude") is "ambiguous," "rests on thin air," and otherwise "overlooked" Petitioner's arguments (Corr. Br. at 9, 14). Petitioner argues that because the OCCA "did not discuss certain claims it is not entitled to deference," and he claims *de novo* review is therefore required here (Corr. Br. at 14). However, to the extent Petitioner is raising an argument regarding an alleged lack of a merits adjudication, Petitioner has forfeited such argument under this Court's well-established rule that failure to raise an argument in the District Court forfeits such argument (Corr. Br. at 9, 14). *See, e.g.*, *Harris v. Sharp*, 941 F.3d 962, 975 & n.5 (10th Cir. 2019); *Eizember v. Trammell*, 803 F.3d 1129, 1141 (10th Cir. 2015); *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015); *Olmos v. Holder*, 780 F.3d 1313, 1327 (10th Cir. 2015).

In particular, Petitioner forfeited any argument that the OCCA did not adjudicate Petitioner's "general ineptitude" claim (subclaim (1)) on the merits when he failed to make such an argument in his Petition to the District Court. Although Petitioner did allude to the OCCA's lack of explicit discussion of the "general

ineptitude" claim, he never argued there was no merits adjudication (Corr. App. at

43 (noting OCCA "largely" ignored most of Proposition VI and arguing that "[n]o

finding of fact was made as to the deficiencies or prejudice as presented to the

OCCA"). Indeed, rather than arguing the OCCA made no merits adjudication or

requesting *de novo* review of this claim, Petitioner argued that the OCCA's *decision*

*was unreasonable* under § 2254(d):

> The State court's decision was contrary to, or involved an unreasonable
> application of clearly established federal law in *Strickland v.*
> *Washington*, 466 U.S. 668 (1984). The state court unreasonably applied
> the prejudice prong of *Strickland*. Had counsel acted reasonably, the
> jury would not have heard information regarding Petitioner's prior
> convictions, would not have heard conflicting testimony concerning the
> defense of alibi, would not have heard Chidester's impeachment, and
> would have gotten an instruction for either alibi or lesser-included
> offense. Any finding to the contrary could only be had through an
> unreasonable application of *Strickland*.

(Corr. App. at 49). Thus, by arguing that the OCCA's decision was unreasonable

under § 2254(d), Petitioner appeared to admit that the OCCA adjudicated his

ineffective-assistance-of-counsel claim on the merits.

Moreover, even though Petitioner was *pro se* at the time he filed his Petition,

even the most liberal construction of his Ground IV would not reveal an argument

regarding a lack of merits adjudication or a request for *de novo* review. *Childers v.*

*Crow*, 1 F.4th 792, 798 (10th Cir. 2021) (Court could not rewrite a *pro se* petition

via liberal construction to include an argument that never existed). In fact, neither

Respondent nor the District Court read Petitioner's Ground IV as raising such an

38

argument/request (Corr. App. at 95-110, 156-67). The District Court, much like

Respondent—while noting that the OCCA did not explicitly address every single

one of Petitioner's subclaims of ineffective assistance of counsel—read Petitioner

as making a claim of unreasonableness under § 2254(d):

> [Petitioner] contends the OCCA unreasonably applied *Strickland*
> because it "denied this claim based completely on the circumstances
> surrounding counsel's deficient performance in not investigating [Ms.]
> Chidester's jail records" and "largely ignore[ed] the remainder of this
> claim." Dkt. 3, at 26. He further contends the OCCA unreasonably
> applied *Strickland*'s prejudice prong, arguing, "[h]ad counsel acted
> reasonably, the jury would not have heard information regarding
> [Petitioner's] prior convictions, would not have heard conflicting
> testimony concerning the defense of alibi, would not have heard
> Chidester's impeachment, and would have gotten an instruction for
> either alibi or lesser-included offense." *Id.* at 32.

(Corr. App. at 158-59 (certain alterations in original)).

Thus, because—even with liberal construction—Petitioner did not argue a

lack of merits adjudication or request *de novo* review within Ground IV of his

Petition, Petitioner has forfeited such argument/request. *(Donald) Grant*, 886 F.3d

at 909; *Hancock*, 798 F.3d at 1011. Furthermore, he is not entitled to review of this

forfeited argument because he has not requested plain-error review. *Hancock*, 798

F.3d at 1011 ("Ordinarily, we would consider the forfeited argument under the plain-

error standard. But [the petitioner] has not asserted plain error. Thus, we do not

engage in plain-error review." (internal citations omitted)).

However, even assuming Petitioner has not forfeited this argument, his argument regarding the alleged lack of a merits adjudication is patently incorrect and is contrary to Supreme Court precedent. As noted above, for a state court to adjudicate a claim on the merits and receive deference, it is not necessary that the court provide an opinion explaining its reasoning. *Richter*, 562 U.S. at 98. Rather, there is a presumption that the state court adjudicated the claim on the merits. *Id.* And, importantly, this presumption also applies when a state court addresses "some but not all of a defendant's claims." *Williams*, 568 U.S. at 298. "The caseloads shouldered by many state appellate courts are very heavy, and the opinions issued by these courts must be read with that factor in mind." *Id.* at 300. Indeed, "it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference," especially where "a state court may simply regard a claim as too insubstantial to merit discussion." *Id.* at 298-300.

Truly, that is exactly what happened here. In rejecting Petitioner's ineffective-assistance-of-counsel claim, the OCCA noted that Petitioner failed to "show deficient performance and prejudice with any of his ineffective assistance of counsel claims" (Corr. App. at 13, 16). In so doing, the OCCA explicitly noted that only one of Petitioner's arguments within the claim "require[d] extended discussion" (Corr. App. at 13). In other words, the OCCA adjudicated the entirety of Petitioner's ineffective-assistance-of-counsel claim but noted that it would not expressly discuss

40

each individual argument (as most of the arguments clearly lacked any merit). Petitioner is not entitled to *de novo* review here.

ii.    <u>The OCCA's Decision Not to Expressly Discuss the "General Ineptitude" Portion of Petitioner's Claim was Not Unreasonable:</u>

In addition to arguing that there was no merits adjudication involved here, Petitioner also appears to claim that it was unreasonable (under § 2254(d)) for the OCCA not to explicitly discuss his "general ineptitude" claim when rejecting it (Corr. Br. at 9). In other words, Petitioner feels that the OCCA gave his claim short shrift. In so claiming, Petitioner asserts that the OCCA's decision rested on "thin air" and was thus unreasonable. However, this is entirely without merit and simply does not fit within the rubric of § 2254(d).

As noted above, nothing in § 2254(d) requires a state court to explicitly discuss every single claim raised by a defendant, as "[f]ederal courts have no authority to impose mandatory opinion-writing standards on state courts." *Williams*, 568 U.S. at 298; *Richter*, 562 U.S. at 98. Rather, federal courts look to the overall reasonableness of a state court's decision and "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then [federal courts] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Richter*, 562 U.S. at 102. *See also Sexton v. Beaudreaux*, 138

41

S. Ct. 2555, 2557-58 (2018); *(Donald) Grant*, 886 F.3d at 905-06 ("On habeas review, we properly eschew the role of strict English teacher, finely dissecting every sentence of a state court's ruling to ensure all is in good order"; "[r]ather, our focus is on the reasonableness of the state court's *decision—viz.*, whether that decision is contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts." (emphasis in original)); *Sandoval v. Ulibarri*, 548 F.3d 902, 911 (10th Cir. 2008).

Thus, Petitioner cannot claim that the OCCA's decision here rested on "thin air"[15] or was unreasonable under § 2254(d) *simply because* the OCCA declined to explicitly discuss the "general ineptitude" subclaim. This argument runs afoul of the "well-established principle" that federal courts cannot impose opinion-writing standards on state courts and must analyze claims with "meaningful deference" to state courts and "consider reasonable grounds that could have supported [a] state court's summary decision . . . ." *Beaudreaux*, 138 S. Ct. at 2557. *See also Rogers v. Mays*, 69 F.4th 381, 391-92 (6th Cir. 2023) ("[A]s the Supreme Court has repeatedly

---

[15] Petitioner does not explain how the cases he cites for this "thin air" assertion relate to this case at all (Corr. Br. at 9). These cases do not appear to be discussing state court opinions with silent merits adjudications; rather, these cases appear to be referencing state court opinions that *find no factual support in the record. See, e.g.*, *Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013); *Lambert v. Blackwell*, 387 F.3d 210, 239 (3d Cir. 2004); *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000); *Stermer v. Warren*, 360 F. Supp. 3d 639, 653 (E.D. Mich. 2018), *aff'd but criticized*, 959 F.3d 704 (6th Cir. 2020). As will be shown below, the OCCA's decision here is undoubtedly supported by the record in this case.

held, we may not flyspeck state-court opinions."); *Wood v. Carpenter*, 907 F.3d 1279, 1302–03 (10th Cir. 2018) (rejecting claim that OCCA's decision was unreasonable under § 2254(d) because the OCCA did not draft its opinion in a certain manner, as it was "at war with the Supreme Court's constant refrain that AEDPA does not empower federal courts to impose mandatory opinion-writing standards on state courts" (internal citations and quotation marks omitted)).

Ultimately, Petitioner's arguments with respect to the OCCA's opinion here are either forfeited or are merely criticisms of how the OCCA drafted its Summary Opinion (Corr. Br. at 9, 14). These arguments cannot meet Petitioner's onerous burden under § 2254(d). Petitioner is not entitled to relief.

> **b.    *Petitioner has Failed to Show that the OCCA's Rejection of his Ineffective-Assistance-of-Counsel Claim was Unreasonable:***

As noted, assuming this Court grants Petitioner appellate review despite the deficiencies in his Corrected Brief, the only portion of the COA arguably before this Court—in light of Petitioner's various waivers—is his claim that trial counsel exhibited "general ineptitude" during trial (Corr. Br. at 14-21). As intimated above, on direct appeal and in his habeas Petition, Petitioner argued about various areas of counsel's "bumbling" performance: 1) that counsel was admonished by the trial court for improper cross-examination of Ms. White and Officer Diedrich; 2) that counsel's cross-examination of Detective Mellen (in reference to the photographic

lineup) might have, but did not, reveal that Petitioner's photograph was taken when he was incarcerated; and 3) that counsel allegedly failed to instruct the defense witnesses to avoid mention of Petitioner's criminal history or previous incarceration (Corr. App. at 43-44; Supp. App. Vol. III at 608-609). On appeal, however, the nature of Petitioner's theory of relief under *Strickland* or § 2254(d) is not immediately apparent.[16] Again, the bulk of Petitioner's "argument" is lifted directly from the District Court's Opinion and Order. However, in spilling ink discussing deficient performance (the portion of Petitioner's claim the District Court found persuasive), Petitioner fails to tackle prejudice—the portion of Petitioner's claim that the District Court found *unpersuasive*.

Indeed, in reviewing Petitioner's ineffective-assistance-of-counsel claim, the District Court was troubled by the "general ineptitude argument" and "struggle[d] to discern a reasonable argument to support the OCCA's view that trial counsel did not perform deficiently as to his cross-examination of Officer Diedrich and Detective Mellen or as to his apparent failure to adequately advise defense witnesses to avoid mentioning [Petitioner]'s prior incarceration" (Corr. App. at 161-65). But, in so finding, the District Court conceded that the OCCA's overall resolution of the claim was reasonable, as the OCCA ultimately "viewed the record as a whole and

---

[16] Again, this is why Respondent urges this Court to find that Petitioner has waived appellate review in this case. Respondent and this Court should not be forced to liberally construe pleadings drafted by a *counseled* litigant.

found no reasonable probability that, but for counsel's alleged deficiencies, the result of his trial would have been different" (Corr. App. at 167, 169). Thus,

> [e]ven if all fairminded jurists might agree that it was objectively unreasonable for the OCCA not to find other aspects of trial counsel's performance deficient or to include those additional deficiencies in assessing *Strickland* prejudice, *this Court concludes that it must deny the petition as to claim four because there is "room for reasonable disagreement" as to the OCCA's decision that [Petitioner] was not denied his Sixth Amendment right to the effective assistance of trial counsel.*

(Corr. App. at 169 (emphasis added)).

Consequently, by merely regurgitating the District Court's deficient performance analysis, Petitioner fails to address the very prong he lost in the lower federal court proceedings. Petitioner has not given this Court any reason whatsoever to overturn the District Court's resolution of the prejudice prong.[17]

### i.   Petitioner has Failed to Demonstrate Error Under *Strickland*:

With respect to *Strickland*, in the fleeting portions of his argument not borrowed from the District Court, Petitioner makes conclusory assertions somewhat reminiscent of the arguments he made to the OCCA and the District Court regarding deficient performance (Corr. Br. at 14-21). However, Petitioner does not appear to

---

[17] In a fleeting sentence, Petitioner argues that the District Court should have found prejudice merely because it also found deficient performance (Corr. Br. at 19-20). However, this "argument" is worthy of little discussion. *Strickland* is a two-prong test, and not every act of deficient performance renders the result of a trial unreliable.

provide *any* theory of relief with respect to *Strickland*'s prejudice prong; rather, he makes conclusory assertions that prejudice automatically resulted from counsel's alleged deficient performance (Corr. Br. at 20-21). However, *Strickland* has two prongs, and Petitioner cannot claim that the prejudice prong is satisfied simply because he believes the deficient performance prong is also satisfied. *Strickland*, 466 U.S. at 687 ("Unless a defendant *makes both showings*, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (emphasis added)). This failure to support his assertions of prejudice with argument should be fatal to his claim. *See (Donald) Grant*, 886 F.3d at 914 (petitioner was "hard-pressed to satisfy" his burden where he made "no effort to take up the cudgel by making specific arguments").

Ultimately, however, even assuming that trial counsel rendered deficient performance, Petitioner simply cannot show prejudice with respect to counsel's alleged "general ineptitude."[18] *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). With respect to counsel's cross-examination of Ms. White and Officer Diedrich, Petitioner does not point to

---

[18] Respondent is not conceding that trial counsel rendered deficient performance. Rather, it is easier for this Court to dispose of this claim based upon that fact that Petitioner has made no compelling argument with respect to prejudice. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

any potential helpful evidence counsel could have revealed had he cross-examined those witnesses in a different manner (Supp. App. Vol. I at 257-60, 273-77). With respect to counsel's questions to Detective Mellen about the photographic lineup, Petitioner has not identified how counsel's questions to Detective Mellen harmed him in any way, particularly considering the fact that the prosecutor interrupted the questioning before Detective Mellen could provide any potentially inflammatory information (Supp. App. Vol. I at 284-88). Finally, with respect to counsel's advice (or lack thereof) to defense witnesses about Petitioner's criminal history, Petitioner fails to show how fleeting references to his criminal past "tainted" the jury (Supp. App. Vol. II at 320-21, 342). This is especially true when considering the fact that the jury sentenced Petitioner to a sentence barely above the minimum despite learning he was a five-time convicted felon in the punishment phase of the trial (Supp. App. Vol. II at 396-98, 510-11, 515).[19]

Moreover, as the OCCA stated in its rejection of another portion of Petitioner's ineffective-assistance-of-counsel claim, any argument Petitioner could attempt to make with respect to prejudice *pales* in comparison to the overwhelming evidence against Petitioner at trial. This evidence included: 1) "the victim's

---

[19] The jury was instructed that the punishment range for Burglary in the First Degree after two or more felony convictions was twenty years to life (Supp. App. Vol. II at 510-11). The jury sentenced Petitioner to imprisonment for twenty-three years, only three years above the minimum (Supp. App. Vol. II at 515).

unequivocal identification testimony" via the photographic lineup and the in-court identification; 2) the "strong evidence bolstering the reliability of the victim's identification testimony," such as evidence that Petitioner has a hearing impairment (therefore explaining the burglar's lack of reaction to Ms. White when she screamed at him); 3) the biased, incredible, discredited, and "dubious alibi testimony from [Petitioner]'s four family members"; and 4) the evidence from Petitioner's family that he was merely "a block and a half (a short walk) away from the victim's house when the burglary occurred," and that "he had more than sufficient opportunity to commit the crime considering the close proximity of the victim's house to his location" (Corr. App. at 13-16). In short, the evidence was overwhelming, and Petitioner makes no argument to demonstrate *how* counsel's alleged deficient performance prejudiced Petitioner.

Considering the above, Petitioner has failed to demonstrate that error occurred under *Strickland* with respect to counsel's alleged "general ineptitude." *Strickland*, 466 U.S. at 687.

> ii.    <u>Petitioner has Failed to Demonstrate that No Fairminded Jurist Could Agree With the OCCA's Rejection of His Claim:</u>

Moreover, with respect to § 2254(d), Petitioner does not engage whatsoever with the OCCA's application of *Strickland* or the well-established fairminded jurist standard. *See Richter*, 562 U.S. at 103 ("As a condition for obtaining habeas corpus

from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). For example, while Petitioner argues that the OCCA's decision with respect to his ineffective-assistance-of-counsel claim was "objectively unreasonable" and violated § 2254(d)(1) *and* (d)(2), he does not explain *how* (Corr. Br. at 8-9, 12). Again, this alone should be fatal to Petitioner's claim. *See Redfearn v. Rankins*, No. 22-6061, 2023 WL 116475, at *2 (10th Cir. Jan. 6, 2023) (unpublished) ("[Petitioner] does not articulate any specific deficiency in the state's case, nor does he provide any basis to conclude the OCCA's decision was contrary to clearly established Supreme Court law."); *(Donald) Grant*, 886 F.3d at 914 (petitioner was "hard-pressed to satisfy" his burden where he made "no effort to take up the cudgel by making specific arguments").

Ultimately, though, Petitioner cannot show that the OCCA unreasonably applied *Strickland* when rejecting his claim of "general ineptitude." When granting the OCCA's decision meaningful deference and considering any reasonable grounds that could have supported its decision, it is clear that the OCCA's decision here was well reasoned. *See Beaudreaux*, 138 S. Ct. at 2557. This is especially true when considering the total lack of prejudice involved here and the OCCA's findings in that regard (Corr. App. at 13-16). Indeed, Petitioner appears to even *admit* that he

cannot meet his onerous burden under § 2254(d). In the concluding paragraph of Petitioner's Corrected Brief, Petitioner states that he is entitled to the writ because "the District Court has determined *that reasonable jurist[s] may debate* among the resolution of [Petitioner]'s constitutional claims raised herein" (Corr. Br. at 21 (emphasis added)). Reasonable debate is *quite different* from an error that is "beyond any possibility of fairminded disagreement." *Richter*, 562 U.S. at 103.

In light of the foregoing, Petitioner "cannot show that no fairminded jurist could agree with the OCCA's decision." *Holland v. Allbaugh*, 824 F.3d 1222, 1230 (10th Cir. 2016). *See also Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021).

### 4.   *Conclusion:*

As shown, Petitioner is not entitled to relief with respect to this claim. Not only has Petitioner forfeited certain portions of this claim, but he has also entirely failed to carry his heavy burdens under *Strickland* and § 2254(d). Habeas relief is therefore unwarranted.

### C.   **Conclusion:**

Considering the above—including Petitioner's various waivers and his failure to demonstrate that the OCCA's decision was unreasonable—this Court should affirm the District Court's rejection of this claim.

## CONCLUSION

Based on the above and foregoing law and reasoning, federal habeas corpus relief is unwarranted. Therefore, Respondent respectfully requests that this Court affirm the District Court's denial of habeas relief.

## STATEMENT OF ORAL ARGUMENT

Oral argument would not materially assist the disposition of this appeal, and Respondent disagrees with Petitioner's assertion that the facts of this case "warrant an oral argument" (Corr. Br. at 1). Rather, Respondent believes that the underlying facts and legal arguments have been presented adequately in the briefs and record. This Court's decision will not be significantly aided by oral argument from the parties. *See* Fed. R. App. P. 34(a)(2)(C). Accordingly, this case should be submitted without the necessity for oral argument.

Respectfully submitted,

**GENTNER F. DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

s/ **TESSA L. HENRY**
**TESSA L. HENRY, OBA #33193**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Fax: (405) 522-4534
Service email: fhc.docket@oag.ok.gov

**ATTORNEYS FOR**
**RESPONDENT/APPELLEE**

51

## CERTIFICATE OF COMPLIANCE

      1.     This document complies with the word limit of Fed. R. App. P. 27(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 12,943 words.

      2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.

s/ TESSA L. HENRY

## CERTIFICATE OF SERVICE

**X**     I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of this Court on July 14, 2023, and for electronic transmission to:

Ms. Debra K. Hampton

s/ TESSA L. HENRY

## CERTIFICATE OF DIGITAL SUBMISSION

This is to certify that:

      1.     All required redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF format is an exact copy of the document filed with the Clerk;

      2.     The digital submissions have been scanned for viruses with Symantec Endpoint Protection, Updated 7/14/23, and according to said program, are free of viruses.

s/ TESSA L. HENRY